UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 92-00394-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**JACOBO RESNIK**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Jacobo Resnik's ("Resnik['s]") Motion to Dismiss the Superseding Indictment ("Motion") [ECF No. 281], filed February 28, 2014. On March 17, 2014, Plaintiff, United States ("the Government") filed a Response . . . ("Response") [ECF No. 283]. Resnik filed a Reply . . . ("Reply") [ECF No. 284] on March 25, 2014. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I.  BACKGROUND

The issue before the Court is whether the twenty-one year delay between Defendant Resnik's indictment and arrest violated his Sixth Amendment right to a speedy trial. (*See* Mot. 1). On April 7, 1993, Resnik and his nephew, George Gandelman ("Gandelman"), were charged by superseding indictment with conspiring to structure transactions to evade currency reporting requirements, in violation of 31 U.S.C. section 5324(3) and 18 U.S.C. section 371, and related crimes. (*See* Resp. 2, 4). The charges arose out of Resnik's alleged use of his bank accounts to

facilitate Gandelman's laundering of suspected narcotics proceeds.[1] (*See id*.). Two days later, the Government learned from Resnik's attorney that Resnik had returned to the city of Barranquilla in his native country, Colombia. (*See id.* Ex. 2).

Resnik departed to Colombia in October 1992, approximately six months before he was indicted, leaving behind his then-wife and young daughter in the Southern District of Florida. (*See* Mot. ¶ 2). Around the time of Resnik's departure, his attorney was in plea negotiations with the Government and had indicated Resnik would plead guilty to a structuring violation in exchange for not being charged with money laundering. (*See* Resp. 7). According to Gandelman, Resnik knew he "was about to be indicted" and was "very concerned about the financial aspects of his defense" because he was "cashless." (*Id.* 6). Several months before he left, Resnik sold his perfume business and later informed the buyer he was being investigated for "exchanging checks with his nephew." (*Id.* Ex. 3 ¶¶ 3–5, 9–10).

In Resnik's absence, Gandelman's case proceeded to trial. In July 1993, a jury convicted Gandelman of four of the six charges against him, including those in which Resnik was also named. Gandelman was ultimately sentenced to seventy-eight months' imprisonment. (*See* Resp. 5).

Meanwhile, the Internal Revenue Service ("IRS") pursued Resnik through its customary database searches for fugitives. This included monitoring Resnik's criminal history and arrest records in the National Crime Information Center ("NCIC"), his travel into and out of the country in the Treasury Enforcement Communications System ("TECS"), his title and property acquisitions in "CP Clear," his driver's license information in Department of Motor Vehicles

---

[1] The original indictment charged Gandelman alone with money laundering, in violation of 18 U.S.C. section 1956(a)(3)(B). The superseding indictment added charges against Resnik and Gandelman for structuring transactions to evade currency reporting requirements. (*See* Resp. 4).

databases, and his banking activities. (*See* Resp. 9). The IRS searched these databases on an approximately annual basis beginning May 5, 1993.[2] Resnik's case was transferred to fugitive status on October 25, 1993, and a warrant for his arrest was issued on February 1, 1996. (*See id.* 5, 9).

Resnik lived in Colombia for over twenty years under his legal name. (*See* Mot. ¶ 2). During that time, he owned and operated a small business in Bogota, Colombia, which he incorporated with the Bogota Chamber of Commerce. (*See id.* ¶ 4). He also traveled extensively to countries in Central and South America and Europe, and conducted business with suppliers located in the United States. (*See id.* ¶¶ 3–5, 11). Resnik maintained regular contact with his ex-wife, daughter, and sister, all of whom resided in the Southern District of Florida. (*See id.* 7).

Resnik was finally detained in Panama on January 14, 2014, by officials working with U.S. Customs and Border Protection. (*See* Resp. 5–6). He was escorted by Panamanian immigration officials to Miami and arrested by the U.S. Marshals Service on January 16, 2014. (*See id.* 6). Shortly thereafter, he filed the present Motion.

## II.   LEGAL STANDARD

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. If a court finds this right has been violated, it "must set aside any judgment of conviction, vacate any sentence imposed, and dismiss the indictment." *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (citations omitted). To determine whether a pretrial delay has violated a defendant's speedy trial right, courts employ the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), which

---

[2] Resnik's name was not entered into NCIC and TECS until August 3, 1994. (Resp. 9). Additionally, the IRS lacks documentation of the database searches it conducted between June 2, 1999 and April 28, 2011, but has apparently confirmed they indeed occurred. (*Id.* n.4).

weighs the following factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice borne by the defendant. *Villarreal*, 613 F.3d at 1350 (citing *Barker*, 407 U.S. at 530). The Court analyzes each factor in turn.

### III. ANALYSIS

1. <u>The Length of the Delay</u>

The first factor of the balancing test is actually "a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992). The Court must first determine whether the "interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay," so as to warrant analysis of the remaining *Barker* factors. *Id.* at 651-52 (internal quotation marks omitted). Generally, a delay of more than one year is considered presumptively prejudicial. *See, e.g.*, *United States v. Ingram*, 446 F.3d 1332, 1336-37 (11th Cir. 2006) (two-year delay between indictment and trial required court to apply *Barker* test); *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996) (seventeen-month delay was sufficient to entitle defendant to presumption of prejudice); *Doggett*, 505 U.S. at 652 n.1 ("[T]he lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.") (alteration added)). Here, the twenty-one year delay between Resnik's indictment and arrest clearly meets the threshold for presumptive prejudice.

Once the threshold inquiry has been satisfied, "the [C]ourt must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652 (alterations added). The longer the delay stretches beyond the "bare minimum," the stronger the presumption that it has prejudiced the

defendant. *Id.* Since twenty-one years significantly exceeds the threshold for presumptive prejudice, the first factor weighs heavily against the Government.

2.  *The Reason for the Delay*

The Government has "an affirmative constitutional obligation to try the defendant in a timely manner." *Ingram*, 446 F.3d at 1337 (internal quotation marks and citation omitted). The Government therefore bears the burden of explaining the cause for the pretrial delay. *Id.* To meet this burden, the government must demonstrate it pursued the defendant "with reasonable diligence from his indictment to his arrest." *Doggett*, 505 U.S. at 656. However, if the defendant "intentionally evades the Government's efforts to bring him to trial, [he] is culpable in causing the delay." *Ingram*, 446 F.3d at 1337 (alteration added).

Where a defendant has lived in a foreign country for much of the period encompassing pretrial delay, reasonable diligence is often established through extradition. *See, e.g.*, *United States v. Heshelman*, 521 F. App'x 501, 507 (6th Cir. 2013) ("[R]easonable diligence has been found where the government seeks the assistance of foreign governments and uses the tools available to find and extradite the defendant.") (alteration added)); *United States v. Fernandes*, 618 F. Supp. 2d 62, 69 (D.D.C. 2009) ("[T]he hallmark of government diligence is extradition.") (alteration added)). However, the Government is not required to seek extradition where doing so would be futile. *See, e.g.*, *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) ("Bagga's absence from the country did not relieve the government of its obligations to make good-faith efforts to have him returned. . . . But such efforts do not require the government to pursue futile legal gestures."); *United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1988) (finding the government had no duty to request extradition where the evidence established Colombia was not extraditing citizens during the period of pretrial delay).

Here, the parties agree that seeking Resnik's extradition from Colombia would have been futile, as that country's laws prohibited the extradition of native-born Colombians who, like Resnik, were indicted prior to December 17, 1997.[3] (*See* Resp. 8; Reply ¶ 7). The Court therefore assesses the Government's efforts in relation to other cases where reasonable diligence was found despite the unavailability of extradition. The Government's database searches are consistent with the strategies employed in such cases. For example, in *Bagga*, where there was "great doubt" that the defendant's offense was extraditable under India's laws, the court found reasonable diligence where the Government registered his name with NCIC and "took steps to apprehend Bagga if and when he sought return to the United States." *Bagga*, 782 F.2d at 1544. In *Blanco*, the court found the government acted diligently in listing the defendant's fugitive report in NCIC and TECS and placing her name on passport and visa "lookouts." *Blanco*, 861 F.2d at 775–76. Similarly, in *United States v. Corona-Verbera*, 509 F.3d 1105 (9th Cir. 2007), the Court found that entering the defendant's name in NCIC and border computer systems "constitute[d] diligence on the part of the government," when seeking extradition from Mexico would have been futile. *Id.* at 1115 (alteration added).

Nevertheless, there are troubling gaps in the Government's search efforts. First, it appears no database checks were performed in 1997 or 1998. (*See* Resp. 9). While it is debatable whether reasonable diligence can be satisfied by database searches alone,[4] it is clearly not

---

[3] Article 35 of the Colombian Constitution, as amended by the Extradition Reform Act on December 17, 1997, states "[e]xtradition will not apply when the facts took place previous to the promulgation of this norm." *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1174 (11th Cir. 2009) (citing Constitución Política de Colombia tit.1, art. 35 (1997)). Prior to December 17, 1997, Article 35 provided that "[n]ative-born Colombians may not be extradited." (Resp. 8).

[4] *Compare Fernandes*, 618 F. Supp. 2d at 70 ("Entering a criminal defendant's name into a database is a routine matter and does not satisfy the government's diligence obligation."), *and United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) (finding insufficient evidence of diligence where "the record is silent as to any efforts by the government to apprehend Mendoza beyond merely entering Mendoza's arrest warrant in the law enforcement database"), *with United States v. Valiente-Mejia*, No. 04 Cr. 772

satisfied when there is a two-year gap in performing such searches, particularly when the Government has identified no other steps it took to locate Resnik. Indeed, a two year delay can itself violate a defendant's speedy trial rights. *See, e.g.*, *Ingram*, 446 F.3d at 1334.

Second, the Government did not attempt to contact Resnik's ex-wife, daughter, or sister to inquire into Resnik's whereabouts. These family members, who lived in the Southern District of Florida and regularly communicated with Resnik, may well have been able to provide his precise location or contact information. *See United States v. Mendoza*, 530 F.3d 758, 761 (9th Cir. 2008) (noting that the government obtained the defendant's phone number in the Philippines by contacting his wife who remained in the United States). The Government does not address this omission other than to assert, incorrectly, that it is "irrelevant to the inquiry before this Court." (Resp. 13 n.5).

Third, the Government is correct that it was not required to subpoena every bank, hospital, or credit card company "throughout the entire country of Colombia" in order to ascertain Resnik's whereabouts. (*See* Resp. 13). But the Government does not explain its failure to attempt any such investigation when it knew Resnik was living in Barranquilla, Colombia in April 1993. Finally, the Government does not address why it could not apprehend Resnik during his extensive travels outside of Colombia, including to Panama in 1999, nearly fifteen years before he was detained there in 2014. (*See* Reply Ex. A1, at 5).

Notwithstanding these deficiencies,[5] Resnik is not blameless in causing his pretrial delay. The Government has offered substantial evidence that Resnik knew about his impending

---

(NRB), 2009 WL 3401210, at *10 (S.D.N.Y. Oct. 9, 2009) ("Courts have routinely held that [entering defendants' information into standard law enforcement databases] support[s] the government's claim that it exercised due diligence in apprehending defendants.") (citations omitted)).

[5] The Court does not consider the nearly three-year delay in issuing Resnik's arrest warrant a deficiency in the Government's efforts. (*See* Resp. 5). Nothing in the record suggests the Government is to blame

charges when he departed to Colombia, including the fact that his lawyer was in plea negotiations at the time, and Resnik discussed his investigation and forthcoming indictment with a business partner and Gandelman, respectively. (*See* Resp. 6–8). There is also sufficient evidence for the Court to infer that Resnik learned of his indictment once he was in Colombia. Resnik was charged in the same indictment as his nephew, Gandelman, for crimes the two allegedly committed together. (*See* Resp. 4–5). Gandelman was convicted and sentenced to a lengthy prison sentence. (*Id.* 5). As Resnik admits he was in regular communication with his family in this District, the Court infers that Resnik learned of these events and of his own indictment years before he was arrested. This inference is supported by the fact that Resnik did not return to the United States in the twenty-one years since his departure, even though his immediate family continued to live here and he traveled extensively to other countries.

The Court concludes that Resnik intentionally evaded the Government's efforts to arrest him. This factor therefore weighs against Resnik, although only slightly so in light of the Government's omissions in pursuing Resnik.

3.      *Defendant's Assertion of his Speedy Trial Right*

The third factor examines whether the defendant timely invoked his speedy trial right. As noted, the Court finds that Resnik learned of his indictment years before he was arrested. However, he did not assert his right to a speedy trial until after his arrest. The third factor, therefore, weighs heavily against Resnik. *See Doggett*, 505 U.S. at 653 (explaining that if the

---

for this delay, particularly since Resnik's case was transferred to fugitive status in October 1993. (*See id.*). *See United States v. Arceo*, 535 F.3d 679, 684–85 (7th Cir. 2008) (finding that the Government was not responsible for the inexplicable delay in issuing an arrest warrant, in part because the case had been reassigned to the fugitive calendar, which implied that "someone in the clerk's office and/or court staff believed there was an outstanding warrant").

defendant knew of his indictment years before he was arrested, the third factor "would be weighed heavily against him").

4.  *Actual Prejudice to the Defendant*

The final factor analyzes the extent to which the defendant was prejudiced by the pretrial delay. The speedy trial right is intended to protect against three types of prejudice: (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the accused," and (3) "the possibility that the accused's defense will be impaired." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532). Of these, the third is "the most serious" because "the inability of a defendant adequately to present his case skews the fairness of the entire system." *Id.* It is also the most difficult to prove because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Id.* at 655 (quoting *Barker*, 407 U.S. at 532).

Because the first three factors do not all weigh heavily against the Government, Resnik must demonstrate that he has actually been prejudiced by the pretrial delay. *Villarreal*, 613 F.3d at 1355. This is so even though the delay here was uncommonly long and gives rise to a strong presumption of prejudice. *Doggett*, 505 U.S. at 652 ("[T]he presumption that pretrial delay has prejudiced the accused intensifies over time.") (alteration added)). That presumption is undermined by Resnik's role in causing the delay and failing to assert his speedy trial right until well after he had learned of the indictment. *See Villarreal*, 613 F.3d at 1355 ("[T]he strength of that presumption is severely undermined, if not completely eliminated, when the defendant himself causes the delay through evasive tactics and is aware of the charges against him but fails to assert his right to a speedy trial.") (alteration added; footnote call number omitted)). Thus, Resnik must show actual prejudice.

Resnik, however, offers only conclusory assertions of prejudice, stating his "ability to obtain exculpatory evidence" has been hampered, and witnesses may not be able to accurately recall past events. (Reply 8). Resnik offers no facts or explanation to support these assertions. Nor does he dispute that the Government has produced hundreds of pages of documents relating to the alleged crime, including bank records, agents' reports, and interview memoranda, and the relevant witnesses are alive and can potentially be located. (*See* Resp. 16; Reply 7). Without more, the Court concludes that Resnik has offered no proof of actual prejudice. *See Clark*, 83 F.3d at 1354 ("[M]ere conclusory allegations of impairment are insufficient to constitute proof of actual prejudice.") (alteration added; citations omitted)). Thus, the fourth factor weighs against Resnik.

### IV. CONCLUSION

On balance, the *Barker* factors weigh against Resnik. While the pretrial delay was extraordinarily long and the Government did not pursue Resnik with the requisite diligence, Resnik's speedy trial claim is undermined by the fact that he knew of the forthcoming charges when he departed to Colombia, did not assert his speedy trial right when he learned of his indictment, and can point to no actual prejudice he has suffered. The Court therefore finds the Government did not deprive Resnik of his right to a speedy trial.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss the Superseding Indictment **[ECF No. 281]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of April, 2014.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record